IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CHARLES WHITE, on his own
behalf and others similarly situated                                                    PLAINTIFFS

V.                                                                    CAUSE NO.: 4:11CV007-SA-JMV

NTC TRANSPORTATION, INC., et al.                                                        DEFENDANTS

MEMORANDUM OPINION

Numerous motions have been filed in this case to date. Defendants seek to establish that individual Defendants, Jackie Netterville, Sr., and Evelyn Netterville are not personally liable under the Mississippi Limited Liability Act by motion for partial summary judgment [49]. Plaintiffs' then sought to strike Defendants' reply brief filed in support thereof [56]. Defendants then filed another Motion for Summary Judgment [81] seeking a determination that Defendants are not covered by the Fair Labor Standards Act (FLSA). Plaintiffs filed a motion to deny the request for summary judgment as premature [85]. The Court considers all arguments made in the briefing on those motions, and also considers the filings in support and in response to Plaintiffs' Motion for Summary Judgment [129].

Accordingly, the Court finds: (1) Defendants are covered by the FLSA; (2) Jackie Netterville, Sr., is an "employer" under the FLSA, and therefore can be held liable under that statute, while a question of fact exists as to whether Evelyn Netterville is an "employer;" and (3) there exist genuine disputes of material fact as to whether Plaintiffs were paid for all time worked and whether those alleged violations were willful or liquidated damages are due to Plaintiffs. Defendants' Motion for Partial Summary Judgment [49] is therefore, DENIED. Defendants' Motion for Summary Judgment [81] is DENIED. Plaintiff's Motion for Summary

Judgment [129] is GRANTED IN PART and DENIED IN PART. All other motions except Defendants' Motion for Decertification [131] and Motion for Hearing [134] are terminated.

*Factual and Procedural Background*

Plaintiff Charles White was an hourly-paid driver employed by Defendant NTC Transportation, Inc., a Mississippi corporation. He seeks to bring this claim on behalf of those similarly situated, and a class has been conditionally certified.[1] In their capacity as employees, Plaintiffs picked up, transported, and dropped off non-emergency Medicaid medical patients. Plaintiffs contend that because they were not allowed to use the company-provided vehicles for personal business, and NTC maintained a policy requiring drivers to pick up patients within ten to fifteen minutes of their appointments ending, Plaintiffs derived no benefit from the time they spend waiting in Defendants' vehicles. Accordingly, Plaintiffs contend that all time spent in Defendants' vehicles without patients therein was compensable time for which they were not paid pursuant to a "down time" policy. Plaintiffs further contend Defendants deducted automatically a one hour lunch break, which Plaintiffs claim they were not able to take. In addition to the "down time" and "lunch hour" deductions, Plaintiffs contend Defendants failed to pay them for the hours as calculated by Defendants that they worked. Plaintiffs also complain that they were not paid the promised premium for "lift pay" and that Defendants failed to compensate overtime including the "lift pay" premium. Plaintiffs submit that these FLSA violations were willful, and thus, subject to the FLSA's three year statute of limitations, as opposed to the statutorily-imposed two years.

Because NTC Transportation is a Mississippi corporation, only transporting passengers intrastate, it contends its work is "purely local" and does not affect interstate commerce such that its actions are covered by the FLSA. Indeed, Plaintiffs never claimed to have used an NTC

---

[1] The Court will address the Motion for Decertification promptly.

vehicle to transport a passenger over Mississippi state lines; however, Plaintiffs claim that NTC purchased at least twenty vehicles, maybe closer to seventy vehicles, that had, at some point, moved in interstate commerce. The Court first determines whether the FLSA applies to Defendants' business.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have

3

never constituted an adequate substitute for specific facts showing a genuine issue for trial. <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002); <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1997); <u>Little</u>, 37 F.3d at 1075.

*Discussion and Analysis*

1. <u>Application of the FLSA</u>

"In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." <u>Reich v. Tiller Helicopter Servs., Inc.</u>, 8 F.3d 1018, 1024 (5th Cir. 1993); <u>Griffin v. S&B Eng'rs & Constructors, Ltd.</u>, 507 F. App'x 377, 380 (5th Cir. 2013). In order to be eligible for the FLSA protections, an employee must first demonstrate that he is "covered" by the FLSA. There are two types of FLSA coverage. First, an employee may claim "individual coverage" if he regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." <u>Josendis v. Wall to Wall Residence Repairs Inc.</u>, 662 F.3d 1292, 1299 (11th Cir. 2011) (quoting <u>Thorne v. All Restoration Servs., Inc.</u>, 448 F.3d 1264, 1266 (11th Cir. 2006)); <u>see also</u> 29 U.S.C. § 207(a)(1) (mandating time-and-a-half for "employees . . . engaged in [interstate] commerce or in the productions of goods for [interstate] commerce"). Second, an employee is subject to "enterprise coverage" if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1). In relevant part, an enterprise is engaged in commerce or in the production of goods for commerce if it

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

Id. § 203(s)(1)(A)(i)-(ii).

The first prong of the enterprise coverage definition can be met in one of two ways: (1) either by the "engaged in commerce" clause, or (2) the "handling" clause. Other courts have recognized that the "engaged in commerce" clause can be analyzed essentially in the same manner as individual coverage is analyzed, the difference being in individual coverage, the question is whether the plaintiff himself engaged in interstate commerce, whereas in enterprise coverage analysis, the question is whether any two or more of the business's employees engaged in interstate commerce. See Brennan v. Greene's Propane Gas Serv., Inc., 479 F.2d 1027 (5th Cir. 1973); Mendoza v. Detail Solutions, LLC, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012); Rodilla v. TFC-RB, LLC, 2009 U.S. Dist. Lexis 104157 (S.D. Fla. Nov. 4, 2009).

While neither party disputes that NTC has the requisite annual gross volume of sales to qualify as an "enterprise" for the relevant time period, there is a question regarding whether the employees handled, sold, or worked "on goods or materials that have been moved in or produced for commerce by another person . . . ." Id. § 203(s)(1)(A)(i). Congress amended the FLSA to add the "handling" provision in 1966, and again in 1974 adding the words "or materials" to the handling clause. Congress failed to include a definition of the word "materials" to the FLSA, and courts have struggled to apply the most recent amendments. The focus of this Court's inquiry is on the amended handling clause, i.e., whether NTC Transportation had employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." Id.

Here, there seems to be no dispute that the Ford vehicles utilized by NTC Transportation's employees were manufactured outside the State of Mississippi. Plaintiffs attached an affidavit from a Ford employee in Michigan stating that "while the Ford Taurus is

5

sold throughout Mississippi, no Ford Taurus has ever been finally assembled or manufactured in Mississippi." See Polycarpe v. E&S Landscaping, Inc., 616 F.3d 1217, 1221 (11th Cir. 2010) (instructing that to determine whether a good or material has been subject to interstate commerce, courts look to where the item was produced, as opposed to where it was bought) (citing Brennan, 479 F.2d at 1030 ("[T]he [FLSA] was designed to regulate enterprises dealing in articles *acquired* intrastate after travel in interstate commerce.").[2] Further, there is no question that more than two employees drove those vehicles in the normal course of business. See id. at 1220 ("If an employer ha[s] two or more workers engaged in commerce or the production of goods for commerce, the FLSA coverage extend[s] to all of the enterprise's employees").

Accordingly, the question for this Court is whether the vehicles utilized by NTC Transportation are "goods" or "materials" such that NTC Transportation's employees are entitled to "enterprise coverage" under the FLSA. "Goods" is expressly defined by the FLSA as "wares, products, commodities, merchandise or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). Thus, where employees were "handling, selling, or working on goods," the employer could be exempt from FLSA coverage under this "ultimate consumer exception" where the employer was the ultimate consumer of all its "goods" moved in or produced for interstate commerce, and the employer was not a "producer, manufacturer, or processor" of those "goods."

---

[2] The Court notes that the Fifth Circuit's best guidance on enterprise liability discussed the threshold annual gross volume of sales requirement, but failed to address the interstate commerce prong. See Martin v. Bedell, 955 F.2d 1029 (5th Cir. 1992) (holding that the employer of offshore cooks on oil rig maintenance boats was not exempted from enterprise coverage under the FLSA as the threshold sales volume was met).

The Eleventh Circuit has commented that the 1974 amendment and addition of the disjunctive "goods *or* materials" demonstrates that Congress was "purposefully adding a different means to qualify for FLSA coverage." Polycarpe, 616 F.3d at 1222.³ Indeed, the Eleventh Circuit has held that "materials" cannot be covered by the ultimate-consumer exception, an exception set out only in the Act's definition of "goods," so if the defendants had employees "handling, selling, or otherwise working on . . . materials" as well as meeting the other requirements, those defendants would be subject to the FLSA. Id.

The Court further adopts the Eleventh Circuit's two-part framework to determine wheher an item qualifies as a "material" under the FLSA. Polycarpe, 616 F.3d at1225; see also Mendoza, 911 F. Supp. 2d at 441-42; Polycarpe v. E&S Landscaping Serv., Inc., 821 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2011) (order on reconsideration of dismissal after remand). The first inquiry is "whether in the context of its use, the item fits within the ordinary definition of 'materials' under the FLSA." Polycarpe, 616 F.3d at 1225-26. The Court in Polycarpe defined "material" using the common definition found in Webster's Third International Dictionary, as "tools or other articles necessary for doing or making something." Id., at 1223. The Court analyzed the legislative history and Department of Labor opinion letters to support the expansive interpretation of "materials." The legislative history noted that the addition of the words "or materials" after "goods" "make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used in a laundry." S. Rep. No. 93-690, at 17 (1974) (internal citations omitted). The Circuit Court noted that the report language helps to "confirm that Congress intended its 1974 amendments to expand the number of employers subject to the act." Polycarpe, 616 F.3d at 1224

---

³ The Fifth Circuit has not yet had the opportunity to weigh in on the definition of "materials," nor has the Appellate Court encountered determining whether under the FLSA an employer has employees "handling" "materials that have been moved in or produced for commerce . . . ." 29 U.S.C. §203(s)(1)(A)(i).

(citing Dunlop v. Indus. Am. Corp., 516 F.2d 498, 502 n.8 (5th Cir. 1975)).  Further, the "legislative history here helps confirm that where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'" Id. at 1225.  The Department of Labor concurred that the inclusion of the words "or materials" was intended to expand FLSA coverage where employees use an item that qualifies as "materials" under that Act. Id. (citing Brief for Sec'y of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, at 13, 15, 17-23).

The second inquiry is "whether the item is being used commercially in the employer's business." Id. at 1225-26.  Under this prong, the "materials" must have a "significant connection with the employer's commercial activity as opposed to a mere incidental use." Id. at 1226.  Indeed, the Court noted that "the context of an item's use in the pertinent commercial setting ensures that the item is given accurate statutory meaning and legal significance within the framework of a statute designed to cover some – but not all – employers." Id. at 1227.  To demonstrate the application of this prong, the Eleventh Circuit, and district courts following the framework since, have analogized other factual situations to the example outlined in the legislative history as indicative of a "material" in a business. See S. Rep. No. 93-690, at 17 (1974) (invoking soap used by a laundry as an example of "material").

Plaintiffs contend that the vehicle provided by Defendants for the transport of non-emergency patients is a "material" that has been moved in interstate commerce with a significant connection with the transportation of those patients.  As noted, the out-of-state origin of at least the Ford[4] vehicles is not disputed, thus, the Court must determine whether those vehicles, in the context of their use, are "tools or other articles necessary for doing or making something," see

---

[4] Plaintiffs acknowledge that not all vehicles utilized in Defendants' business are Ford; however, Plaintiffs and Defendants agree that there were several Ford vehicles driven by employees of NTC Transportation as part of their job duties during the relevant time period.

Polycarpe, 616 F.3d at 1225-26; Mendoza, 911 F. Supp. 2d at 441-42, and further, whether the vehicles have a significant connection to the transportation of non-emergency patients.

The Court reviewed case law of other districts, and particularly the Southern District of Florida from which the Polycarpe decision commenced, to determine that the vehicles used in the commission of Defendants' business are indeed tools necessary for the commission of the business with a significant connection to the transportation of non-emergency patients. Once the Eleventh Circuit handed down the Polycarpe decision, several district courts addressed enterprise liability under the FLSA using the standards set forth. On remand in Polycarpe, the district court determined that the trucks used by plaintiffs to transport themselves and lawn maintenance equipment from client to client were "materials" as it was "necessary for the Defendants' employees to use the trucks to transport themselves and the landscaping equipment to each work site." Polycarpe v. E&S Landscaping Serv., Inc., 821 F. Supp. 2d 1302, 1307 (S.D. Fla. 2011). That court held that the trucks could not qualify as "goods" as the defendants did not sell or deal in trucks. Id. (distinguishing that trucks used in transporting lawn equipment in this case from the rental vehicles determined to be "goods" in Rodilla, 2009 U.S. Dist. Lexis 104157 (S.D. Fla. Nov. 4, 2009)). Indeed, the court determined because the trucks were used as "an article to reach the job sites to perform the commercial service of lawn maintenance," the trucks did not qualify as goods. Id. Further, the district court held that the trucks (which were manufactured out of state) had a "significant, and not incidental, connection with the Defendants' commercial landscaping business" and that they were an "integral tool used by at least two employees of Defendants' commercial landscaping business to transport the landscapers and the landscaping equipment to each work site." Id.

Likewise, another district court held that machinery, such as excavators, loaders and bulldozers qualify as "materials" that traveled in interstate commerce triggering enterprise coverage under the FLSA. Centeno v. I&C Earthmovers Corp., 2013 U.S. Dist. Lexis 127382, *42 (S.D. Fla. Sept. 6, 2013). The court noted that the employer provided general contractor services for construction projects intrastate. Those jobs required excavators, loaders and bulldozers, all manufactured outside the state of Florida, to perform this work. Thus, those machines were necessary to the employers business and were "materials" under the statute. Id. at *41-42.

In Mendoza, the district court held that plaintiff could not assert "enterprise coverage" on the basis of automobiles where the plaintiff failed to include evidence that the cars he washed were manufactured in states other than Texas. 911 F. Supp. 2d at 441. In addition, the court held that the uniforms plaintiff argued he was required to wear in his position as a car washer did not qualify as "materials" under the FLSA because they were "not necessary for doing or making anything and they do not have a significant connection to the activity of washing cars." Id. at 442.

The Court also finds persuasive the guidance in Polycarpe, that "where a restaurant uses interstate cooking equipment as an article to perform its commercial activity of serving food, the restaurant is engaged with "materials" that will subject the business to FLSA coverage. 616 F.3d at 1225. Accordingly, the vehicles used in the performance of transporting non-emergency patients to appointments in the course of Defendants' business are "materials," i.e., those vehicles are necessary for transporting those patients and they have a significant connection to the activity of transporting the patients. Defendants are therefore subject to FLSA coverage.

2. <u>Employer Liability under the FLSA</u>

Plaintiffs contend that Jackie Netterville and Evelyn Netterville, co-owners of NTC Transportation, are "employers" under the FLSA, and therefore, subject to joint and several liability for any violations under that statute. Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 206(b). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).

The Court recognizes that the "remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." <u>McLaughlin v. Seafood, Inc.</u>, 867 F.2d 875, 877 (5th Cir. 1989). Accordingly, the Fifth Circuit has approved use of the "economic realities" test to determine who is an employer under the FLSA. <u>Williams v. Henagan</u>, 595 F.3d 610, 620 (5th Cir. 2010) (citing <u>Goldberg v. Whitaker House Coop., Inc.</u>, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) (noting in the FLSA context that "economic reality rather than technical concepts is to be the test of employment")). To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Gray v. Powers</u>, 673 F.3d 352, 355 (5th Cir. 2012) (quoting <u>Williams</u>, 595 F.3d at 620). "The dominant

theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." Id. at 357.

In cases where there may be more than one employer, this court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test. Id. (citing Watson v. Graves, 909 F.2d 1549, 1556 (5th Cir. 1990). Accordingly, the Court analyzes each defendant individually.

    *a. Jackie Netterville*

Jackie Netterville owns fifty-one percent of the stock in NTC Transportation, Inc., and is also the Chief Executive Officer. In that capacity, he solicits contracts, participates in transportation conferences, and visits with potential customers. However, he also indicated that sometimes, "as an officer of the company" he would have to "negate a paycheck altogether" in order to have enough to pay all the employees. He admitted to hiring employees as CEO, setting their pay, holding staff meetings to discuss operations, and helping develop the policies contained in the Employee Handbook, many of which are implicated in this FLSA action.

Based on the four part test sanctioned by the Fifth Circuit, the Court finds Jackie Netterville qualifies as an "employer" under the FLSA. In the global context of economic realities, Jackie Netterville is an "employer" as it is "only he who could authorize compliance with" the FLSA, including wage provisions. Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984). Testimony from the individual defendant indicated that he had the power to hire employees, he affected the conditions of their employment by requiring payment over minimum wage, and developed the down time policy and lift pay policy, both at issue here. The economic reality of his position is one of control and power over the NTC employees. As such, he may be held jointly and severally liable under the federal statute for unpaid wages.

*b. Evelyn Netterville*

Evelyn Netterville, forty-nine percent owner of NTC stock, is the Vice President of Corporate Affairs and Accounting Clerk. In her capacity of Vice President, she testified that she drove Jackie Netterville to meetings, prepared coffee for him, took dictation, and kept up with his paperwork. As the Accounting Clerk, she would enter drivers' time and create the payroll checks. Throughout Jackie Netterville and Evelyn Netterville's depositions, it was noted that she also issued memoranda to the employees regarding the proper use of company vehicles, trained staff on lift devices, and input the drivers' daily time using travel logs, dispatch records, and employee time sheets. She additionally counseled with employees regarding their pay if the drivers indicated an oversight on their paycheck, and was part of the decision-making process as to promoting employees.

Based on the deposition testimony of Evelyn Netterville, the Court finds that a question of fact exists as to whether she qualifies as an "employer" under the FLSA. "The power to oversee dispute resolution concerning pay is not determinative of the power to make decisions regarding the rate or method of payment." Martin v. Spring Break '83 Prods., LLC, 688 F.3d 247, 253 (5th Cir. 2012) (denying "employer" status where no evidence was presented that the individuals determined the rate or method of payment, only that they could investigate payment-related complaints); Gray, 673 F.3d at 357 (holding that evidence that an individual occasionally signed checks and that employees told him how much money they made in tips did "not indicate that [the individual] determined the employees' rate or method of payment"). However, considering her part ownership of the business, as well as her express dealings with the payroll, the Court finds that the evidence creates a genuine dispute of material fact as to whether she was in a position of control over the employees.

13

3. <u>Payment for Hours Worked</u>

Plaintiffs contend summary judgment is due on their claims that Defendants failed to pay them for all hours worked. In particular, Plaintiffs assert that pursuant to Defendants' "down time" policy, in which drivers were not paid for time spent in their vehicles with no patient, but in which the drivers were "engaged to be waiting," violated the FLSA. Moreover, Plaintiffs contest Defendants' policy to unilaterally deduct one hour for lunch from the hours submitted for pay even though, according to Plaintiffs, they frequently worked through lunch and there exists no record of Plaintiffs ever taking a break. Despite the unilateral deductions, however, Plaintiffs assert that Defendants failed to pay the hours calculated by the employer. Plaintiffs further cite Defendants failure to include "lift pay" or "lift hours" when calculating the regular rate and overtime hours and pay. Defendants argue that there is a genuine dispute of material fact as to the nature of Plaintiffs activities during down time and the designated meal period, and whether those activities constitute "work." They further assert that genuine disputes exist as to whether the time spent without patients in the vehicle was time spent predominantly for the employers' benefit, such that the hours would be compensable under the FLSA.

"[W]hether waiting time was working time 'is a question dependent upon all the circumstances of the case.'" <u>Bright v. Houston Northwest Med. Ctr. Survivor, Inc.</u>, 934 F.2d 671, 674 (5th Cir. 1991) (quoting <u>Armour & Co. v. Wantock</u>, 323 U.S. 126, 65 S. Ct. 165, 168, 89 L. Ed. 118 (1944). Indeed, the Court cannot lay down a single "legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time." <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 65 S. Ct. 161, 163, 89 L. Ed. 124 (1944). The <u>Skidmore</u> Court recognized that "facts may show that the employee was engaged to wait, or they may show that he waited to be engaged," and concluded that whether such time falls within or without the

14

Act is a question of fact." Id., 89 L. Ed. 124 (citing Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S. Ct. 332, 87 L. Ed. 460 (1943)).

The Court finds persuasive the analysis of a factually similar case out of the Tenth Circuit. Norton v. Worthen Van Serv., Inc., 839 F.2d 653 (10th Cir. 1988). There, drivers transported railroad crews at irregular and unpredictable intervals. During the disputed on-call time, "drivers [were required to] be near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes." 839 F.2d at 654. The drivers were only compensated, however, in the event they were actually called. The plaintiffs argued "that the unpredictability of assignments and the short response time which they [were] allowed preclude[d] their using th[e] waiting period for their own purposes." Id. (footnote omitted). The district court granted summary judgment to the employer and the Tenth Circuit affirmed on the basis that it was undisputed that the "drivers spent their time between assignments at the homes of friends, at church, at laundromats, at restaurants, at pool halls, and at a local gymnasium." Id. Here, it is disputed whether Plaintiffs were free to engage in activities for their own personal benefit. Plaintiffs contend, as the drivers in Norton did, that the short response time precluded them from using it to their benefit, however, the Defendants have put forth evidence negating the same.

The Court cannot review the record and determine whether, pursuant to the down time policy, Plaintiffs were "waiting to be engaged," or "engaged to be waiting." Moreover, the Court finds that whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all the evidence. Bernard v. Ibp, Inc., 154 F.3d 259 265 (5th Cir. 1998). Accordingly, the Court finds summary judgment inappropriate as to all Plaintiffs' failure to pay minimum wage and overtime wage claims.

    4.  Liquidated Damages under the FLSA

The FLSA, 29 U.S.C. § 216(b), allows for liquidated damages to be awarded for FLSA violations in an amount "equal" to actual damages. Ransom v. M. Patel Enters., 2013 U.S. App. LEXIS 17142, *28 (5th Cir. Aug. 16, 2013). The general rule is that the court should award the amount found for actual damages as liquidated damages. See Singer v. City of Waco, Tex., 324 F.3d 813, 822-23 (5th Cir. 2003). Because genuine disputes of material fact exist as to the amount of damages, if any, available in this case, the Court denies summary judgment on this issue.

    5. Statute of Limitations under the FLSA

The issue of whether a particular FLSA violation was "willful" determines the statute of limitations that applies to that violation. See 29 U.S.C. § 255(a). If the violation was not willful, then a two-year statute of limitations applies. Id. If the violation was willful, however, a three-year statute of limitations applies. Id. As a result, employees can collect three years of unpaid wages and/or overtime compensation. Singer, 324 F.3d at 821. Under the FLSA, a violation is "willful" if the employer either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" Id. (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)). The burden of showing that an FLSA violation was "willful" falls on the plaintiffs. See id.; Stokes v. BWXT Pantex, LLC, 424 F. App'x 324, 326 (5th Cir. 2011); Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim.).

Genuine issues of material fact exist as to whether the alleged violations of the FLSA were willful such that the three year statute of limitations apply to this action. Evidence in the record suggests that Jackie Netterville sought the opinion of an attorney in developing the policies which Plaintiffs contend violate the FLSA. Netterville admitted to being aware of

overtime and minimum wage regulations. However, there is also evidence that NTC unilaterally discounted the hours purported to have been "worked" by the Plaintiffs with no explanation. Moreover, Netterville acknowledged that NTC was investigated for these practices by the Department of Labor on the basis that the policies might implicate the FLSA. Netterville took no action with regard to ensuring that the policies complied with the FLSA despite the investigation. The Court finds that if violations of the FLSA do exist, genuine disputes regarding whether the actions taken by NTC were willful or not preclude a finding of summary judgment.

*Conclusion*

The Court, ever "mindful of the liberal construction to be afforded the FLSA," Mitchell v. C.W. Vollmer & Co., 349 U.S. 427, 429, 75 S. Ct. 860, 99 L. Ed. 1196, (1955); Wirtz v. Keystone Readers Service, Inc., 418 F.2d 249, 261 n.8 (5th Cir. 1969), recognizes that "the Act must be applied with reason and in a common sense fashion." Dunlop v. Ashy, 555 F.2d 1228, 1234 (5th Cir. 1977). Based on the applicable language of the FLSA, as well as the case law discussing enterprise coverage, the Court finds that the vehicles driven by Plaintiffs and other employees of the Defendants to transport non-emergency medical patients qualify as "materials" that have traveled in interstate commerce to trigger enterprise coverage under the FLSA.

Further, pursuant to the economic realities test, individual Defendant, Jackie Netterville, Sr., is considered an "employer" under the FLSA; however, the evidence presents a genuine dispute of material fact as to whether Evelyn Netterville exercised such control over the employees of NTC to be considered an "employer."

As to the remaining claims in Plaintiffs' Motion for Summary Judgment, the Court finds that genuine disputes of material fact exist. Specifically, the Court notes the determination of whether Plaintiffs were paid for all hours worked, and whether they were paid the correct regular

rate and/or overtime rate, whether liquidated damages are appropriate, and whether Defendants' conduct, if violative of the FLSA, was willful, contain questions of fact not appropriate for summary judgment.

Accordingly, Plaintiff's Motion for Summary Judgment [129] is GRANTED IN PART and DENIED IN PART. This determination effectively DENIES Defendant's Motion for Partial Summary Judgment [49]; DENIES Defendants' Motion for Summary Judgment [81]; and TERMINATES Plaintiffs' Motion to Deny Motion as Premature [85] and Plaintiffs' Motion to Strike Reply Brief [56].

SO ORDERED, this the 27th day of September, 2013.

                                           **/s/ Sharion Aycock**
                                           **U.S. DISTRICT JUDGE**